Filed 9/16/21  P. v. Estrada CA2/5

**/NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B305831 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA470271) |
| v. | |
| UBALDO ESTRADA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Stricken in part, reversed and remanded in part, and affirmed in part.

Robert L. Hernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Ulbaldo Estrada of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a) [count 2]),[1] and found true the allegation that the felon in possession of a firearm crime was committed for the benefit of, at the direction of, or in association with, a criminal street gang (§ 186.22, subd. (b)(1)(C)).[2]  The jury found Estrada not guilty of second degree robbery (§ 211 [count 1]), shooting at an occupied vehicle (§ 246 [count 3]), and assault with a firearm (§ 245, subd. (a)(2) [count 4]).

In a bifurcated proceeding, Estrada admitted that he had suffered two prior strikes.  (§§ 667, subds (b) – (j) & 1170.12, subds. (a)–(d).)  Although the truth of an on-bail enhancement (§ 12022.1) was to be decided in the same proceeding, the prosecution offered no evidence of Estrada's custody status,

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Section 186.22, subdivision (b)(1)(C), does not apply to charges of possession of a firearm by a felon, because the offense is not a violent felony.  At sentencing, the trial court amended the information to correctly reflect that Estrada was charged with a gang enhancement pursuant to section 186.22, subdivision (b)(1)(A), which applies to non-violent felonies and carries a lesser penalty.

Estrada did not admit that he had been on bail at the time he committed the instant offense, and the court did not make any findings with respect to the enhancement.

At the sentencing hearing, the trial court imposed a total sentence of nine years in state prison.  The court imposed the middle term of two years in count 2, doubled to four years pursuant to the three strikes law, plus three years for the gang enhancement (§ 186.22, subd. (b)(1)(A)), plus another two years for the on-bail enhancement (§ 12022.1).

On appeal, Estrada contends that there was insufficient evidence to support the gang enhancement (§ 186.22, subd. (b)(1)(A)), and insufficient evidence to support the on-bail enhancement (§ 12022.1).  Estrada argues that both enhancements should be stricken.

The People contend that substantial evidence supports the gang enhancement.  The People concede that the on-bail enhancement was imposed in error, but contend that the matter should be remanded to allow the prosecution the opportunity to re-try the enhancement.

We order the three-year gang enhancement (§ 186.22, subd. (b)(1)(A)) stricken.  We reverse the two-year on-bail enhancement (§ 12022.1) and remand the matter for the District Attorney to decide whether to proceed with a bench trial regarding Estrada's bail status at the time the instant offense was committed.  In all other respects, we affirm the trial court's judgment.

## FACTS

### *The Bicycle Theft*[3]

On the evening of August 4, 2018, Jovanny Camano and Jesus Vidriales were at Trinity Park in Los Angeles, when Hector Lopez (Estrada's co-defendant at trial) approached them and asked Camano if he could use his cell phone. Lopez's demeanor made Camano nervous, so he told Lopez that he did not have cell service. Lopez continued to insist, but Camano made excuses to avoid giving Lopez his phone. Lopez then asked Camano where he was from and if he had a "street name." Camano believed that Lopez was asking whether he was affiliated with a gang. Camano responded that he was not "from" anywhere and did not have a street name. Lopez insisted that Camano had a street name, but Camano denied it. Lopez mentioned either his own street name or his gang name, which started with an "F." Camano thought Lopez might be a gang member.

A man with a shaved head approached Lopez, Camano, and Vidriales, but stopped on the opposite side of a chain-link fence. The man said something to Lopez about a car being damaged. Lopez looked at Camano's bicycle, which Camano had next to him, and approached it at a "very fast rate." Camano grabbed his bicycle and told Lopez not to take it. Lopez persisted. The man with the shaved head pulled out a pocket knife, opened it, and began walking toward them. He asked if there was a problem.

---

[3] Although Estrada was acquitted of the robbery charge relating to the bicycle, the jury found his co-defendant guilty of misdemeanor theft.

4

Camano was scared and thought the man might stab him, so he released the bicycle.  Camano and Vidriales ran away.  Lopez rode away on Camano's bicycle.  The second man also rode away on a bicycle.

Camano and Vidriales went to Vidriales's house and called 911 to report the theft.  Camano also texted his mother, Erika Rosales.  Rosales went to the area near Trinity Park after her son told her about the bicycle theft.  Rosales saw Lopez riding her son's bicycle.  She told Lopez that the bicycle belonged to her son.  Around that time, police officers arrived, and Lopez let go of the bicycle.  Estrada was detained by police.

Rosales placed a phone call to her son to tell him that she was at the scene where his bike was and that the police were there; Camano and Vidriales came to the location.  Camano and Vidriales approached the officers and gave a statement about what had happened.  They also identified the bicycle, which was on the sidewalk near Lopez.

Afterwards, police officers drove Camano and Vidriales a short distance away for a field show-up.  Officers lifted Estrada's shirt to show his tattoos.  After observing the tattoos, Camano identified Estrada as one of the men who took his bicycle.  Camano identified Lopez as the person who wanted to use his phone.  Vidriales identified Lopez as the man who had asked to use Camano's phone and then took the bicycle.  Vidriales was unable to identify the man who had the knife when the bicycle was stolen.

At trial, Vidriales testified that the man who pulled out the knife was shirtless and had a "23" tattoo on the front of his body.  Camano testified that the man who pulled out a knife was wearing a shirt at the time.  Camano had seen the same man in

5

the park earlier that day.  He was shirtless and had a large "23" tattooed on his back, and possibly a tattoo on his chest.  Camano recalled identifying the man in the field show-up based on a large "23" tattoo on the man's back.  However, Officer Ian Chessum, who was present during the field show-up, testified that the large "23" tattoo shown to Camano was on Estrada's chest.

### *The Alleged Shooting*

At approximately 5:45 p.m. on August 4, 2018, Arcelia Mora and her 14-year-old son were walking near Trinity Park.  Mora saw two men riding bicycles.  One of the men, who was wearing a black shirt, made a flirtatious comment.  Mora ignored him, and the man insulted her.  Mora exchanged words with the man, and kept walking.  Mora heard approximately three gunshots.  She turned around and saw a white car speeding away.  Mora called 911 and reported the shooting.  Mora did not think anyone had been injured because the car sped away quickly.  She described the shooter as a Hispanic man with a mustache, who was wearing a black shirt, a beanie, and shorts.

Three days later, Mora picked Estrada's photograph out of a six-pack line-up, and indicated that he looked similar to the shooter.  In a recorded police interview, Mora stated that she saw the man with the mustache drop his bicycle and kick the white car while it was stopped near a stop sign.  Mora said that the man then pulled out a handgun and fired three shots as the white car drove away.  The shooter grabbed his bicycle and "they" took off.  She did not remember if the man in the black shirt had a gun, was near the white car, or followed the white car.  Los Angeles Police Detective Ryan Stogner, who interviewed Mora

6

soon after the incident, testified that Mora was reluctant to cooperate with the police because she feared for her safety, and did not want her son to be involved in the investigation.

*Firearm Possession*

Los Angeles Police Officer Jose Zavala and his partner, Officer Montano, arrived at Trinity Park shortly after 5:45 p.m., in response to the shooting.  Estrada was in the middle of the street leaning against the driver's side of a Toyota Camry.  He matched the description Mora had given of the shooting suspect.  The officers ordered Estrada to get down on the ground.  Officer Zavala heard Estrada tell the driver of the Camry that he was going to go to jail for a long time because he had a firearm.  Officer Zavala found a black revolver in the front right pocket of Estrada's shorts.  The revolver could hold up to hold five bullets.  There were three spent shell casings and two live rounds at the time Officer Zavala recovered it.

*Gang Evidence*

On the day of his arrest, Estrada told Officer Zavala that he was "Gordo" from the "Tiny Flips" clique of the West Side Primera Flats gang (Primera Flats).  Lopez identified himself as "Foolie" from Primera Flats.  Primera Flats, also known as 23rd Street Primera Flats, is a criminal street gang with 115 to 130 members.  According to Officer Zavala, the gang's primary activities included vandalism, graffiti, murders, shootings, aggravated assault, robbery, grand theft auto, kidnapping, and extortion.  Common tattoos for members of Primera Flats

included "PF" and the number "23," which symbolizes 23rd Street.  Estrada had several gang tattoos, including a "23" on his stomach, "Flats" on his chest, a "P" on his right arm, "Tiny Flips" on his right arm, "Flats" on the top of his hand,  and a large "PF" on the back of his head.  Officer Zavala opined that Estrada and Lopez were both members of  Primera Flats.

Officer Zavala testified that the primary rival of Primera Flats was the Ghetto Boys, a gang with nearby territory.  There was an ongoing violent rivalry between the two gangs.  Members of each gang entered the other gang's territory to commit crimes. As a result of the unrest, the two gangs had become very protective of their respective territories.  Trinity Park was a Primera Flats stronghold.

Officer Zavala opined that a gang member shooting a firearm at an occupied vehicle within his gang's territory benefitted the gang by creating fear and intimidation within the community and protecting the gang's "turf."  He explained that it was important for gang members to instill fear in the community so that the gang could commit crimes without being reported.

Officer Chessum, an expert on Primera Flats, described the gang's primary activities as murder, attempted murder, drive-by shootings, assault with a firearm, street robberies, narcotics sales, vandalism (including tagging), and possession of firearms and weapons.  Officer Chessum also testified that Trinity Park was a stronghold of Primera Flats' territory.  Primera Flats formerly shared Trinity Park with the Ghetto Boys, but now there was a "blood feud" between the gangs over the park.  There had been multiple murders committed by members of both gangs. Officer Chessum explained that Primera Flats was very

8

protective of Trinity Park and would do just about anything to keep rivals out of the area.

Officer Chessum testified that one reason gang members have large, visible tattoos is to intimidate the community. When armed gang members commit crimes, the crimes often go unreported. If the gang does not commit crimes against community members and possess weapons, the gang's territory will likely be usurped by another gang. When given a hypothetical scenario based on the facts of the charged offense of shooting at a vehicle, Officer Chessum opined that the offense was committed for the benefit of the gang, because the shooter was defending the gang's territory.

## DISCUSSION

### Section 186.22 Gang Enhancement

Estrada contends that there was insufficient evidence to support the jury's true finding on the gang enhancement under section 186.22, subdivision (b)(1)(A), relating to his conviction for felon in possession of a firearm. We conclude that there is insufficient evidence to support the jury's finding that Estrada intended to promote, further, or assist in criminal conduct by gang members, and we order the enhancement stricken.

#### Legal Principles

When reviewing for sufficiency of the evidence, we determine whether substantial evidence supports the verdict. Substantial evidence is defined as evidence that is reasonable,

9

credible, and of solid value. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) A reviewing court must accept logical inferences the jury might have drawn from the circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "'A reasonable inference, however, "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence."' [Citation.]" (*People v. Cluff* (2001) 87 Cal.App.4th 991, 1002.) This standard applies to assessing the sufficiency of the evidence to support a true finding on an enhancement allegation. (*People v. Vargas* (2020) 9 Cal.5th 793, 820.)

"Section 186.22 adds various sentencing enhancements for gang-related felonies . . . . [It] requires proof of only two elements: (1) that the defendant committed a felony for the benefit of, at the direction of, *or* in association with any criminal street gang and (2) that he did so with the intent to promote, further, or assist in criminal conduct by gang members. (*People v. Albillar* (2010) 51 Cal.4th 47, 67 [(*Albillar*)].)" (*People v. Mejia* (2012) 211 Cal.App.4th 586, 613.)

"'In order to prove the elements of the criminal street gang enhancement, the prosecution may, as in this case, present expert testimony on criminal street gangs.' (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047–1048.) "'Expert opinion that particular criminal conduct benefited a gang" is not only permissible but can be sufficient to support [a] gang enhancement.' (*People v. Vang* (2011) 52 Cal.4th 1038, 1048; see *Albillar, supra*, 51 Cal.4th at p. 63.) While an expert may render an opinion assuming the truth of facts set forth in a hypothetical

10

question, the 'hypothetical question must be rooted in facts shown by the evidence.' (*People v. Gardeley* [(1996)] 14 Cal.4th [605,] 618.)  Indeed, an 'expert's opinion may not be based "on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors."' (*People v. Richardson* (2008) 43 Cal.4th 959, 1008; see *People v. Gardeley, supra*, 14 Cal.4th at p. 618.)" (*People v. Franklin* (2016) 248 Cal.App.4th 938, 948–949.)  "As for the specific intent prong, "'[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense."' [Citation.]" (*Id*. at p. 949.)

"Not every crime committed by a gang member is gang related.  (*Albillar*[, *supra*,] 51 Cal.4th [at p.] 60; [*People v.*] *Rios* [(2013)] 222 Cal.App.4th [542,] 565 [(*Rios*)].)  Nor can a crime be found to be gang related simply because the perpetrator is a gang member with a criminal history.  (*In re Frank S.* [(2006)] 141 Cal.App.4th [1192,] 1199.)  Although a lone actor may be subject to a gang enhancement, merely belonging to a gang at the time of the commission of the charged conduct does not constitute substantial evidence to support an inference the sole actor specifically intended to promote, further, or assist any criminal conduct by gang members.  (*Rios*, [*supra*,] at p. 566.)" (*People v. Perez* (2017) 18 Cal.App.5th 598, 607 (*Perez*).)  Instead, "[g]ang membership is simply circumstantial evidence establishing that the crime was gang related and a motive for why a defendant may have harbored the 'specific intent to promote, further, or assist in any criminal conduct by gang members.' (§ 186.22, subd. (b)(1); [*People v.*] *Sanchez* [(2016) 63 Cal.4th 665,] 698–699.)" (*People v. Villa-Gomez* (2017) 9 Cal.App.5th 527, 540.)

11

## Analysis

*Presence of a Fellow Gang Member*

The People argue that the commission of an offense with a fellow gang member constitutes substantial evidence that Estrada intended to promote, further, or assist any criminal conduct by gang members, but here there is no evidence that Estrada and Lopez committed any gun-related crime in concert. Lopez did not use or possess the gun, and no evidence was presented that he had the right to possession of the gun as a fellow Primera Flats member. Nor was there evidence that Lopez somehow aided Estrada in obtaining the gun or maintaining possession of it. Lopez was not charged with any crime in the incidents involving the gun, and there was no evidence that he engaged in criminal activity in connection with those incidents. Estrada's specific intent cannot be inferred from Lopez's presence alone. (See *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1362 [intent prong not met where fellow gang members were not charged with any crime related to the incident].)

*Evidence Underlying Other Alleged Crimes*

The People argue that the evidence relating to the crimes of which Estrada was acquitted supports the gang enhancement attached to his conviction for felon in possession of a firearm. The People cite to *U.S. v. Powell* (1984) 469 U.S. 57, at page 67, which held that review for sufficiency of the evidence as to one count "should be independent of the jury's determination that evidence on another count was insufficient" as support for this

12

proposition. Even if we were to accept the proposition that evidence relating to crimes of which a defendant was acquitted could support a gang enhancement attached to a different charged crime, in this case such evidence would be insufficient to support the true finding that Estrada intended to promote, further, or assist in criminal conduct by gang members by illegally possessing a firearm.

The prosecution's expert witnesses did not opine as to whether, in a hypothetical based on facts that paralleled Estrada's possession of a firearm, the defendant would be acting with the specific intent to promote, further, or assist in criminal conduct by gang members. Rather, the People urge us to consider instead the opinions offered by the expert witnesses that, in a hypothetical that paralleled *the alleged shooting* (i.e., a circumstance where the gang member fired the gun at a vehicle), the defendant would be acting with the specific intent to promote, further, or assist in criminal conduct by gang members. An expert's opinion is based on the factual scenario that he or she is given. Although the expert may qualify that opinion—e.g., by stating that he or she would be of the same opinion even if the gun was merely possessed and not fired—the experts did not do so here. Even if we assumed the jury could consider the evidence offered in support of the shooting incident, including the testimony of the experts, that does not change the substance of the experts' opinions. We cannot know what the experts would have opined under those circumstances, and their opinions regarding a different factual scenario cannot serve as evidence to support the gang allegation on the possession of a firearm as a felon charge.

13

With respect to the alleged shooting, nothing in the record indicates that Estrada's specific intent was to promote, further, or assist in criminal conduct by gang members. Estrada did not claim Primera Flats or make his gang membership known in any manner in the alleged shooting incident. Mora testified that the man who shot at the white car was wearing a black shirt (i.e. the large tattoo of the number "23" on Estrada's chest or back was covered). She did not testify that she knew Estrada was a gang member or that the shooting was otherwise gang-related. The jury could not have reasonably inferred that Estrada intended to promote, further, or assist in criminal conduct by gang members simply because he was a gang member at the time that he fired at the white car. "[M]erely belonging to a gang at the time of the commission of the charged conduct does not constitute substantial evidence to support an inference the sole actor specifically intended to promote, further, or assist any criminal conduct by gang members. (*Rios*, [*supra*, 222 Cal.App.4th] at p. 566.)" (*Perez, supra*, 18 Cal.App.5th at p. 607.)

With respect to the incident in which Estrada allegedly robbed Camano using a knife, evidence was presented that he was not wearing a shirt, and the large "23" tattoo indicating his Primera Flats membership was visible, which would alert someone familiar with the tattoo's significance to the fact that he was a Primera Flats gang member. There was also evidence that Estrada assisted Lopez, a fellow gang member, in the crime. However, Estrada did not use or display a gun in that incident, so it cannot reasonably be inferred from this incident that he *possessed the gun* later recovered in his possession with the specific intent to promote, further, or assist in criminal conduct

14

by gang members, rather than possessing it for some other reason.

*Other Criminal Activities*

Finally, the People claim that the gun *could* be used to protect Primera Flats territory (in particular the contested area near Trinity Park), to shoot rival gang members, to commit one of an array of crimes that are among Primera Flats's primary activities, or to instill fear in the community. Indeed, these are all possibilities, but the evidence does not tend to show that any of these potential reasons to possess a firearm was more likely to be the reason that Estrada *actually* possessed the gun rather than some other, purely personal reason. "[T]he People's expert gave a possible motive or reason for [Estrada's] being in possession of the . . . gun. The prosecution, however, was required to prove this fact beyond a reasonable doubt. While the People's expert's opinion certainly was one possibility, it was not the only possibility. . . . [A] mere possibility is not sufficient to support a verdict." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 853 (*Ramon*).)

In sum, the prosecution's evidence established that Estrada was a Primera Flats member with gang tattoos, in heavily contested Primera Flats territory, and in the company of a fellow Primera Flats member, when he was arrested for gun possession by a felon. Absent other evidence, being in the company of another gang member within gang territory when one illegally possesses a firearm is inadequate to prove the intent prong of a gang allegation. (See *Ramon, supra*, 175 Cal.App.4th at p. 851.)

We order the gang enhancement stricken.

15

### *Section 12022.1 On-Bail Enhancement*

Estrada next contends that the trial court erred in imposing the on-bail enhancement under section 12022.1, because he did not admit to being on bail when he committed the instant offense, the People offered no evidence regarding his status, and the trial court failed to make any findings with respect to its imposition of the enhancement. The People correctly concede this was an error. (§ 12022.1, subd. (c) [on bail enhancement "shall be pleaded . . . and proved"].) Accordingly, we reverse the two-year section 12022.1 enhancement and, as compelled by a 2004 case decided by our Supreme Court, remand the matter for the District Attorney to decide whether to proceed with a bench trial. (See *People v. Barragan* (2004) 32 Cal.4th 236, 241, 244–245 [retrial of an enhancement allegation based upon the defendant's status is permissible and does not violate state or federal due process or double jeopardy].)

## DISPOSITION

The three-year gang enhancement imposed under section 186.22, subdivision (b)(1)(A), is stricken.  The two-year prior on-bail sentence enhancement (§ 12022.1) is reversed, and the matter remanded for the District Attorney to decide whether to proceed with a bench trial regarding Estrada's bail status at the time the instant crime was committed.  In all other respects, the judgment is affirmed.


MOOR, J.


We concur:


BAKER, Acting P.J.


KIM, J.